UNITED STATES DISTRICT COURT
Southern District of Florida
MIAMI

06 - 21...
CIV - GOLD

MAGISTRATE
TURNOFF

| | | |
|---|---|---|
| BARBARA WALSH | CASE NO.: | |
| Plaintiff, | | |

vs.

NCL (BAHAMAS) LTD., a Bermuda
Company D/B/A NCL and/or NCL
AMERICA

Defendants.



## COMPLAINT

COMES NOW the Plaintiff, BARBARA WALSH, through her undersigned attorneys, sue the Defendant, NORWEGIAN CRUISE LINES LTD, a foreign corporation, and allege as follows:

1. At all times material hereto, the Plaintiffs, BARBARA WALSH, was/is sui juris and a domicillary and resident of New Jersey.

2. The Defendant is a limited liability corporation, or legal entity, which at all times mentioned herein, owned, operated, possessed, managed, directed and/or controlled the "NORWEGIAN DAWN" in the waters off the East Coast of the United States, making embarkation at New York City, New York

3. At all times material hereto, the Defendant, NORWEGIAN CRUISE LINES LTD. {hereinafter referred to "NCL"}, was and is a foreign corporation, authorized to do business and was, in fact, doing business in Miami-Dade County, Florida.

4. At all times material hereto, the Defendant, NCL, was doing continuous and systematic business here in the state of Florida, including the operation of a vessel.

5. At all times material hereto, Defendants were doing business and conducting operations known as Norwegian Cruise Line.

6. At all times material hereto, the Defendant was navigating voyages from New York City; and returning to New York City.

7. At all times material hereto, the Defendant was the owner and/or operator and/or carrier.

## JURISDICTIONAL BASIS

8. At all times material hereto, the Defendants entered into a written contract with the Plaintiff wherein the Defendants provide pursuant to the contract of passage, this action could be: commenced, filed and litigated, if at all, before the United States District Court for the Southern District of Florida in Miami, or as to those lawsuits to which federal courts of the United States lack subject matter jurisdiction before a court located in Miami-Dade County, Florida USA, to the exclusion of the courts of any other country, state, city of county. A true and correct copy of the passenger contract is attached hereto, and marked **Exhibit "A"** (the print of which is too small to read except by magnification to the naked eye) and incorporated herein, only for purposes of jurisdiction, venue, and forum.

9. This is an action, which exceeds the minimum jurisdictional limits of this Court for $75,000.00, the Plaintiff and Defendant are diverse pursuant to 28 U.S.C. §1332.

10. This action is equally brought pursuant to 28 U.S.C. §1333, a civil case of admiralty or marine jurisdiction.

11. All conditions necessary to bring this action have been performed or waived.

12. At all times material hereto, the Plaintiff was aboard the "DAWN" as a passenger, having paid her full fare for passage from New York City, with a return to New York City.

13. On or about August 18, 2005, the Plaintiff was a paying passenger / invitee on Defendant's vessel, "DAWN".

14. On August 18, 2005, at approximately 16:15, while the vessel was at sea, the Plaintiff was enjoying a visit to the ship's spa, where she was scheduled to use a hot tub. The spa staff instructed Ms. Walsh to undress and put on a robe, which she did, and crossed the lobby area of the spa to use the Ladies Room. Due to the accumulation of water on the floor of the spa's lobby, Ms. Walsh's feet went out from under her.

15. Even though this was area of the spa's lobby was frequently traversed by wet passengers coming from either the hot tub or the pool area, no provisions were made to keep the area dry or keep the area from being slippery when wet.

### Count I
### Direct Negligence

16. Plaintiff realleges paragraphs 1 through 15, as if copied in extenso.

17. Disregarding its duties in the premises, the Defendants by its agents, servants, and employees, were careless and negligent in the following particulars:

    a.    Failing to use reasonable care under all of the circumstances for the safety of the Plaintiff;

    b.    By allowing an unsafe and hazardous condition to exist.

    c.    Failing to properly and adequately warn the Plaintiff, as to a condition, which existed, which under the circumstances was dangerous then and there existing;

    d.    Failing to properly and adequately warn the Plaintiff of the dangerous condition then and there existing and the possible results, thereof;

    e.    Failing to properly evaluate the spa, such that it should have been aware the lobby area of the Spa was continuously wet, therefore a hazard;

    g.    All other acts and neglects which may be discovered herein.

18. The damages and injuries sustained by the Plaintiff were caused by the breach of the Defendants' undertaking to transport the Plaintiff in a reasonably safe, proper and efficient manner.

19. As a proximate result, the Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization and medical and nursing care and loss of past earnings and future earning capacity. These losses are either permanent, based upon reasonable medical probability, or continuing and the Plaintiff will suffer the losses in the future.

20. By reason of the negligence of the Defendant as set forth above, the Plaintiff was caused to be wrongfully deprived of the pleasures and joys of her vacation trip, a claim is hereby made for the return of her entire passage money and such further consequential damages as this Honorable Court may find proper and just under all of the circumstances.

## Count II
## Negligence

21. The Plaintiff realleges paragraphs 1 through 20 as if copied in extenso.

22. The Defendant has a duty to the Plaintiff to treat her medically, and to allow the Plaintiff the opportunity to all the Plaintiff to enjoy the cruise, even if injured.

23. The Defendant refused to provide the Plaintiff Walsh with a wheelchair for the duration of the voyage, admitting there is an established policy against the use of a wheelchair by passengers.

24. As a result of the Defendant's negligence, the Plaintiff's injuries were exacerbated.

25. The Plaintiffs demands a trial by jury of all issues triable as of right by jury.

WHEREFORE Plaintiffs pray that after due proceeding be had, that there be a judgment entered against the Defendant, in favor of the Plaintiffs, for the injuries and damages so specified, for statutory interest on all liquidated sums from the date of demand, together with pain and suffering, mental anguish, loss of enjoyment of life, loss of consortium and from all other relief this Court deems just and proper, and demands a trial by jury of all issues triable as of right by jury.

Signed this 11th day of July 2006.

Respectfully submitted,

Marc David Sarnoff, Esq.
SARNOFF & BAYER
3000 Shipping Avenue
Coconut Grove, Florida 33133
(305) 441-5966
(305) 441-5977 (Facsimile)
Email: maritime@sarnoffandbayer.com
By:

Marc David Sarnoff, Esq
FBN:607924

# Exhibit "A"

**NCL NORWEGIAN CRUISE LINE**

7665 Corporate center Drive
Miami, FLorida 33126

**Passenger Ticket Contract**
Cruise Ticket

*NORWEGIAN DAWN*  SAILING: *Aug. 14, 2005*  RESERVATION: *12297207*

YOUR CRUISE-MAIL ADDRESS:  bwalsh5650@dawn.cruisemail.net

CABIN: **5650**

TICKET DATE:  7/12/2005
ADULTS: 2   CHILD: 2

EMBARKATION/DEST:  NYC/NYC

AFT
DINING:  FREESTYLE

| | INS | TYPE | CLIENT ID |
|---|---|---|---|
| WALSH, BARBARA | US | N | NP |
| WALSH, JOHN | US | N | NP |
| WALSH, BROOKE | US | N | CH |
| WALSH, ERIC | US | N | CH |

GOV'T TAXES AND FEES:
USD   363.92

FARES AS AGREED

CRUISE TICKET CENTER
1700 ELLER DR.

OWNER/MANAGER

**PORT EVERGLADES FL 33316**
06/01 Ship's Registry:  Bahamas

954-763-6828
To be presented for passage

**IMPORTANT NOTICE**
The passenger's attention is specifically directed to the terms and conditions of this contract set forth below. These terms and conditions affect important legal rights and the passenger is advised to read them carefully.

---

**NCL NORWEGIAN CRUISE LINE**

7665 Corporate center Drive
Miami, FLorida 33126

**Passenger Ticket Contract**
Passenger Copy

*NORWEGIAN DAWN*  SAILING: *Aug. 14, 2005*  RESERVATION: *12297207*
YOUR CRUISE-MAIL ADDRESS:  bwalsh5650@dawn.cruisemail.net

CABIN: **5650**

EMBARKATION/DEST:  NYC/NYC

TICKET DATE:  7/12/2005
ADULTS: 2   CHILD: 2

AFT
DINING:  FREESTYLE

| | INS | TYPE | CLIENT ID |
|---|---|---|---|
| WALSH, BARBARA | US | N | NP |
| WALSH, JOHN | US | N | NP |
| WALSH, BROOKE | US | N | CH |
| WALSH, ERIC | US | N | CH |

GOV'T TAXES AND FEE
USD   363.92

FARES AS AGREED

CRUISE TICKET CENTER
1700 ELLER DR

OWNER/MANAGER

**PORT EVERGLADES FL 33316**
06/01 Ship's Registry:  Bahamas

954-763-6828
Not Good for passage

**IMPORTANT NOTICE**
The passenger's attention is specifically directed to the terms and conditions of this contract set forth below. These terms and conditions affect important legal rights and the passenger is advised to read them carefully.

IF YOU ARE A MEMBER OF OUR PAST GUEST CLUB, LATITUDES, AND THIS TICKET INDICATES YOU ARE A TYPE = "NP", PLEASE CALL NCL AT 1-800-343-0098 BEFORE SAILING TO UPDATE YOUR LATITUDES STATUS.

IMPORTANT NOTICE: PASSENGERS ARE ADVISED TO CAREFULLY READ THE TERMS AND CONDITIONS OF THE PASSENGER TICKET CONTRACT SET FORTH BELOW WHICH AFFECT YOUR LEGAL RIGHTS AND ARE BINDING. ACCEPTANCE OR USE OF THIS CONTRACT SHALL CONSTITUTE THE AGREEMENT OF PASSENGER TO THESE TERMS AND CONDITIONS.

## Passenger Ticket Contract

1. For the purpose of this Contract the term "Carrier" shall include NCL (Bahamas) Ltd. d/b/a NCL and/or NCL America, its designees, assigns, successors or affiliates, the named vessel, any substituted vessel, and its or their tenders, launches and related facilities. The rights, defenses, immunities and limitations of liability set forth herein shall inure to the benefit of the Carrier and all concessionaires, independent contractors or other service providers; any affiliated or related companies, parents, subsidiaries, successors, assigns or fictitiously named entities; all suppliers, shipbuilders, component part manufacturers; and its or their owners, operators, managers, charterers, agents, pilots, officers, crew, and employees. The term "Passenger" shall include any person purchasing, accepting or using this Contract on behalf of themselves or others in their care, including any accompanying minors, and any of their heirs, relatives, successors, assigns or representatives, regardless whether signed by or on his behalf. This fare includes only the transportation as specified herein, full board, and ordinary ship's food, but does not include spirits, wines, beer, sodas or mineral waters, nor charges for other incidental or personal services. The fare does not include government taxes and/or fees which may include, but are not limited to, any and all fees, charges and taxes imposed by U.S. and/or foreign governmental or quasi-governmental authorities including U.S. Customs fees, head taxes, inspection fees, air taxes incurred as part of a land tour, immigration and naturalization fees, harbor maintenance fees and Internal Revenue Service fees. This Contract shall be the entire agreement between the parties and supersedes all representations orconditions contained in Carrier's advertisements, notices, brochures or other literature and all promises and agreements made or claimed to have been made by anyone in connection with the cruise to the passenger or anyone representing him

2. This ticket and Contract is valid only for the voyage specified on the preceding pages and for the person(s) named and cannot be transferred without Carrier's written consent. The fare paid shall be considered fully earned at the time of payment, or if not previously paid, then at the time payment is due or upon embarkation, whichever is sooner. Carrier shall not be liable to make any refund to passenger in respect of lost tickets or in respect of tickets wholly or partly not used by a passenger except as expressly set forth herein, any statute or other governmental regulation to the contrary notwithstanding.

3. Each passenger agrees to abide by all rules of the Carrier and its officers at all times and failure to do so may subject the passenger to disembarkation without any liability on the part of the Carrier for a refund or any other related expenses or losses to the passenger or any accompanying passenger whatsoever. A passenger under 21 years of age must be accompanied in the same or connecting stateroom by a passenger 21 years or older who expressly agrees to be responsible for the under 21 passenger throughout the cruise. This responsibility includes, but is not limited to, preventing the purchase or consumption of alcohol and preventing the violation of any ship rules. If the accompanying adult is not a spouse, parent or legal guardian, a notarized parental/guardian consent letter that authorizes the minor's travel and further authorizes medical treatment in case of an emergency, or certified copy of the marriage certificate, must be delivered to an NCL representative at the pier. Failure to produce such documentation at embarkation may result in boarding being denied with no refund provided. Passengers must be 21 years or older to purchase or consume alcohol or to engage in any form of gambling on the vessel.

4. Passenger is not allowed to bring on board the vessel without the previous written permission of the Carrier any intoxicating liquors or beverages, firearms, weapons of any kind, ammunition, explosive substances or any goods of a dangerous nature, nor animals of any kind, except service or guide animals, provided the passenger notifies Carrier prior to the cruise of his intention to bring such animal and agrees to accept sole responsibility for any expense, damage, injuries or losses associated with or caused by such animal.

5. Unless Passenger obtains prior written permission from Carrier, Passenger shall not solicit other passengers, Carrier's employees, personnel or agents during the voyage with respect to any professional, business, or commercial activity, for profit or otherwise. Failure to adhere to this prohibition may result in ejection from the vessel without liability of the Carrier to refund any portion of the fare or for any incidental costs whatsoever.

6. Carrier's responsibility shall never exceed the limitation of liability to which Carrier is entitled under applicable law. No undertaking, guaranty or warranty is given or shall be implied as to the seaworthiness, fitness, or condition of the vessel or any food, drink, medicine, or provisions supplied on board the vessel. In no event shall Carrier be liable for any incident arising outside the passenger areas of the vessel or the vessel itself, including, but not limited to those occurring ashore, on tenders not owned by the vessel, on or resulting from equipment not a part of the vessel, or upon docks or piers.

7. The passenger admits a full understanding of the nature and character of the vessel and assumes all risks of travel, transportation and handling of passengers and baggage. The passenger assumes the risk of and releases Carrier from liability for any injury, loss or damage whatsoever arising from, caused by or in the judgment of the Carrier or Master rendered necessary or advisable by reason of: any act of God or public enemies; force majeure; arrest, restraints of governments or their departments or under color of law; rulers or people; piracy; war; revolution; extortion; terrorist actions or threats; hijacking; bombing; threatened or actual rebellion, insurrection, or civil strife; fire, explosion, collision, stranding or grounding; weather conditions; docking or anchoring difficulty; congestion; perils of the sea, rivers, canals, locks or other waters; perils of navigation of any kind; lack of water or passageway in canals; theft; accident to or from machinery, boilers, or latent defects (even though existing at embarkation or commencement of voyages); barratry; desertion or revolt of crew; seizure of ship by legal process; strike, lockout or labor disturbance (regardless whether such strike, lockout or labor disturbance results from a dispute between the Carrier and its employees or any other parties); or from losses of any kind beyond the Carrier's control. Under any such circumstances the cruise may be altered, shortened, lengthened, or cancelled in whole or part without liability to the Carrier for a refund or otherwise.

Except as otherwise specified above, if the vessel does not sail on or about the scheduled or advertised date for any reason whatsoever, including fault of Carrier, Carrier shall have liberty to substitute any other vessel or means of transportation, regardless whether owned or operated by Carrier, and to re-berth passengers thereon or, at Carrier's option, to refund the passage money paid or a pro rata portion thereof without further liability for damages or losses of any kind whatsoever.

Carrier, in its sole discretion, shall have full liberty to proceed without pilots and tow and to assist vessels in all situations; to deviate from the direct or customary course for any purpose, including, without limitation, in the interest of passengers or of the vessel, or to save life or property; to put in at any unscheduled or unadvertised port; to cancel any scheduled call at any port for any reason and at any time before, during or after sailing of the vessel; to omit, advance or delay landing at any scheduled or advertised port; to put back to port of embarkation or to any port previously visited if Carrier shall deem prudent; to substitute another vessel or ports of call without prior notice and without incurring any liability to the passengers on account thereof for any loss, damage or delay whatsoever, whether consequential or otherwise.

Carrier shall have the absolute right, without liability for compensation to the passenger of any kind, to comply with governmental orders, recommendations or directions, including but not limited to those pertaining to health, security, immigration, customs or safety. In the case of quarantine, each passenger must bear all risks, losses and expenses caused thereby and will be charged for maintenance, payable day-by-day, if maintained on board the vessel for such period of quarantine. Passenger assumes all risks and losses occasioned by delay or detention howsoever arising. Costs connected with embarkation or debarkation of passengers and/or baggage and costs of transfer between vessel and shore as a result of the circumstances enumerated in this paragraph must be borne by the passenger.

8. (a) Whenever the term "baggage" is used herein, it shall mean only suitcases, valises, satchels, bags, hangers or bundles and their contents consisting of such personal wearing apparel, articles of personal adornment, toilet articles and similar personal effects as are necessary and appropriate for the purposes of the cruise, including all other personal property of the passenger not in a container. No tools of trade, household goods, computers, musical instruments, radios, televisions, electronic equipment, liquors, fragile items, bullion, jewelry, precious stones, money, documents, or other valuables of any description or such articles as are specified in 46 U.S. Code, Paragraph 181 shall be brought upon the vessel by passenger or contained in passenger's baggage, except under and subject to the terms of a special written contract entered into with the Carrier before embarkation upon application of the passenger. The passenger hereby warrants that no such articles have been carried on the vessel or are contained in any receptacle or container presented to the Carrier as baggage. Carrier shall not be liable for any loss of or damage to any of the above listed items, or perishable items, dentures, optical devices (including contact lenses), medications, cameras, recreational and/or sporting equipment, cash, securities or other negotiable instruments under any circumstances whatsoever, whether carried within the passenger's baggage or otherwise.

(b) It is stipulated that the aggregate value of all the passenger's baggage and any other property under this ticket does not exceed $100.00 and any liability of the Carrier or the vessel for any cause whatsoever with respect to said baggage shall not exceed such sum unless the passenger shall in writing specify its true value and pay to the Carrier before embarkation 5% of the excess of such value, in which case the Carrier's liability, if any, shall be limited to the actual damage sustained up to, but not exceeding such specified value.

(c) All disclaimers and limitations of liability contained herein shall apply to all valuables stored or accepted for storage by Carrier, including valuables stored with the Carrier in safety deposit boxes or security envelopes. Carrier cannot accept responsibility for and in no event shall be liable for loss or damage of valuables or other articles left in cabins, and in no event shall Carrier be liable for loss or damage to property of any kind not shown by the passenger to have occurred while in the Carrier's actual custody, or for normal wear and tear.

(d) Loss of or damage to baggage during loading or disembarking must be reported by the passenger to Carrier's personnel prior to debarking the U.S. Customs area; Carrier shall not be responsible for any such loss or damage which is not so reported. Liability, if any, for loss or damage to baggage occurring elsewhere than on board the vessel in connection with air, car, motor coach, ground transfers, porters, stevedores and/or hotels shall rest solely with the person or entity providing such services and passenger agrees that Carrier does not guarantee the performance of such services and shall not be liable in any respect or capacity for any such loss or damage. Carrier has an absolute right to transfer passenger and/or his baggage to other carriers, whether by water, rail or air, to or toward the ultimate destination. In the event such substituted passage is for the convenience of the Carrier, it shall be at Carrier's cost. Otherwise, it shall be at the cost of passenger.

9. In making any arrangements for the transportation of any passenger or his or her baggage by any other carrier, connecting carrier or otherwise; or for shore accommodations, excursions, victualing, amusement or entertainment for any passenger; or for any other service or facility whatsoever for any passenger; or if the vessel carries a surgeon, physician, barber, hairdresser, manicurist, or any individual or entity providing personal services; or if the vessel requests emergency medical transportation or emergency medical care for the passenger on his behalf ; it is understood and agreed that Carrier does so solely for the convenience of the passenger, does not act on behalf of or supervise the parties or persons who own, furnish or operate such services or facilities, and that the same are provided by independent contractors who work directly for the passenger and are subject to such terms, if any, appearing in the tickets, vouchers or notices of such party or parties. Such parties or persons, in dealing with the passenger, are not and shall not be considered in any respect whatsoever as employees, servants or agents of the Carrier. Each such person, party or entity shall be entitled to make a proper charge for any service performed for or on behalf of the passenger and the cost of such service, including, but not limited to physicians, surgeons, hospitals, medications, diagnostic facilities, air ambulance evacuation or ground ambulance, shall be the sole responsibility of the passenger. Passenger hereby agrees to reimburse and indemnify Carrier for any funds advanced on account of any such charges. Carrier assumes no responsibility nor guarantees the performance of any such person, party, contractor, service or facility, or those under their orders or assisting them with respect to any diagnosis, medication, treatment, advice, services or care of any kind given to any passenger. Carrier shall not be liable for the act, neglect, default or omission of any party in respect to any events, matters or things other than as set forth herein.

10. No suit, including without limitation suits brought in rem and in personam, shall be maintained against the Carrier for emotional or physical injury, illness or death of passenger unless written notice of the claim with full particulars be delivered to the Carrier within six (6) months from the day when such injury, illness or death occurred; and in no event shall any suit be maintainable unless commenced within one (1) year from the day when the injury, illness or death occurred, notwithstanding any provision of law of any state or country to the contrary. No suit involving any other manner of claim, legal theory, or cause of action whatsoever arising from, connected with or related to this Contract or the cruise, including but not limited to claims for loss or damage to baggage, or for delay, detention or otherwise, shall be maintainable against the Carrier, either in personam or in rem, unless written notice of the claim with full particulars is delivered to the Carrier within thirty (30) days of termination of the passenger's scheduled cruise and suit is commenced within six (6) months from the day when the cause of action arose, notwithstanding any provision of law of any state or country to the contrary. Passenger agrees that any claim or cause of action brought forth against Carrier shall be litigated solely in a personal capacity and not as member of a class action or in any other representative capacity.

11. Carrier reserves the right, without incurring liability of any kind, to refuse or revoke passage to, or confine to a stateroom, any passenger who in Carrier's sole judgment may be refused admission into a port of landing or into the country of destination, or may be suffering from a contagious disease, or for any other cause may endanger themselves or others, or become obnoxious to others. Any passenger who is refused passage or otherwise denied any advertised benefit or service under this paragraph shall not be entitled to receive any compensation whatsoever and shall become liable for any resulting expenses incurred by the Carrier

12. Carrier disclaims all liability to Passenger for damages for emotional distress, mental suffering or psychological injury of any kind not resulting from a physical injury to that passenger, nor from that passenger having been at risk of actual physical injury, nor intentionally inflicted by the Carrier. On cruises that neither embark, disembark nor call at any U.S. port, Carrier shall be entitled to any and all limitations and immunities provided under the Athens Convention Relating to the Carriage of Passengers and Their Luggage by Sea of 1974, as amended by the Protocol to the Convention Relating to the Carriage of Passengers and Their Luggage by Sea of 1976, which limits Carrier's liability for death or personal injury of a passenger to no more than 46,666 Special Drawing Rights as defined therein (approximately $67,000 U.S. which fluctuates depending on daily exchange rate printed in the Wall Street Journal). In addition, and on all other cruises, Carrier and the vessel shall have the benefit of any statutory limitation of liability or exoneration of liability available in the applicable forum, or under any applicable national or international law, including but not limited to Title 46 of the United States Code, Sections 181 through 186.

13. Upon embarkation, the Passenger shall have in his possession and assumes all responsibility for obtaining all visas, passports, certified birth certificates, travel and health documents required by any governmental authority, and if he fails to do so Carrier shall have no further obligation to transport or to furnish transportation to the passenger. Passengers are advised to consult their travel agent or the appropriate governmental authority concerning required documentation for travel. Passenger shall indemnify Carrier for all penalties, fines, charges, losses and expenses imposed upon or incurred by Carrier due to passenger's failure to have proper documentation or otherwise comply with applicable laws or regulations of any kind, or imposed by governmental authorities. Any stamps on tickets, customs, excise or other taxes or fines on passenger or Carrier resulting from passenger's conduct, embarkation expenses, and all expenses of such a nature are to be paid by passenger. Carrier shall not be liable to refund passenger's fare or for any other damages or expenses if passenger is prohibited from boarding due to lack of proper documents.

14. Passenger will not be liable to pay nor entitled to receive any general average contribution in respect to property taken with them on the vessel.

15. Should any provision of this Contract be deemed invalid for any reason, said provision is deemed to be severed from this Contract and shall be of no effect, but all remaining provisions herein shall remain in full force and effect.

16. The passenger shall be liable to and shall reimburse Carrier for all damages to the vessel and its furnishings and any equipment or property of the Carrier caused directly or indirectly, in whole or in part, by any act or omission of the passenger, whether willful or negligent. The passenger shall further indemnify the Carrier and each and all of their agents or servants against all liability whatsoever arising from any personal injury, death or damage or loss whatsoever caused directly or indirectly, in whole or in part, by any willful or negligent act or omission on the part of the passenger.

17. The passenger agrees that any travel agent utilized by passenger in connection with the purchase of the cruise or issuance of this Contract, or for any related or incidental air or ground transportation or excursions, is solely passenger's agent and passenger shall remain liable to Carrier for the full applicable cruise fare. Carrier shall not be responsible for any representations, insolvency or other conduct of a travel agent, including but not limited to such agent's failure to remit any portion of the cruise fare to Carrier, or to remit any refund to the passenger. Passenger agrees that receipt of any refunds or notices by passenger's travel agent, including this Contract, shall constitute receipt by passenger.

18. Carrier reserves the right to increase fares without prior notice. In such event passenger has the option to accept and pay such increase, or to cancel passenger's reservation without penalty.

19. Carrier shall not be liable for any injuries or damages which occur while participating in athletic or recreational activities aboard the vessel or onshore at any port of call, including, but not limited to, passenger participation in snorkeling programs or passenger usage of any paddle ball, gymnasium, jogging, swimming, diving, health club and sauna facilities. By utilizing said facilities, passenger agrees to assume all risks arising therefrom and does hereby fully release and discharge Carrier from any and all claims, demands, damages, causes of action, present or future, whether the same be known, anticipated or unanticipated, resulting from or arising out of passenger's use or intended use of said facilities.

20. Passenger acknowledges that medical care while on a cruise ship may be limited or delayed and the ship may travel to destinations where medical care is unavailable. Therefore, every passenger warrants that he and those for whom he is responsible for are fit to travel. Any condition of the passenger that may require special attention or treatment of any kind must be reported to Carrier when reservation is requested. A medical certificate certifying fitness for travel may be required of any passenger at Carrier's request. Carrier reserves the right to refuse passage to women in advanced stages (third trimester) of pregnancy. Passengers with special needs are advised that certain international safety requirements and U.S. Coast Guard Regulations may cause difficulty for mobility-impaired persons or persons with severely impaired sight and/or hearing. Passengers requiring the use of a wheelchair must provide their own junior/adult standard size wheelchair (22 1/2 inches wide), as any wheelchairs available on the vessel are for emergency use only. Carrier reserves the right to refuse or revoke passage to anyone who fails to notify Carrier of any physical or emotional condition which may require special assistance or accommodation, or who is, in the sole judgment of Carrier, as a result of such condition unfit for travel, or who may require care, treatment or attention beyond that which Carrier can provide. In such circumstances Carrier shall have no liability to the passenger whatsoever. Passengers may not be able to participate in certain activities or programs either aboard the vessel or onshore at ports of call if to do so would create a risk of harm to any passenger.

21. Cancellation fees for cruise, air, land and other charges apply to all passengers on the reservation. Cancellation fees for air, land and other add-on charges will apply even if the reservation is not cancelled in full. Gateway changes for air and name changes for cruise, air, land and other add-ons are considered cancellations of those items. Cancellations must be telephoned to our Reservations Department. Depending on when the cruise is cancelled, cancellation charges will be assessed per the Terms and Conditions of the cruise brochure. Cancellation charges are subject to change without notice. Air tickets issued by our Air/Sea Department for passengers on our Air/Sea Programs are refundable only to Carrier. Group passenger policies may differ and payment and cancellation charges may differ by promotion. Refer to your travel agent, group booking agreement or promotion for specific terms and conditions.

22. Except as otherwise specified herein, this contract shall be governed in all respects by the General Maritime Law of the United States and, only when not inconsistent with the provisions of this Contract or U.S. maritime law, the laws of the State of Florida. It is hereby agreed that any and all claims, disputes or controversies whatsoever arising from, related to, or in connection with this Contract or the transportation furnished hereunder shall be commenced, filed and litigated, if at all, before the United States District Court for the Southern District of Florida in Miami, or as to those lawsuits to which the Federal Courts of the United States lack subject matter jurisdiction, before a court located in Miami-Dade County, Florida, U.S.A., to the exclusion of the Courts of any other country, state, city or county.

23. Passenger consents to Carrier's use and display of Passenger's likeness in any video, photograph or other depiction for any purpose, commercial or otherwise, without compensation or liability of any kind.

---

Passengers are advised to read the terms and conditions of the Contract set forth below. Acceptance of this Contract by Passenger shall constitute the agreement of Passenger to these Terms and Conditions.

---

## Terms and Conditions
## Norwegian Cruise Line Land Packages

Norwegian Cruise Line granting Purchaser of this Land Package Voucher ("Purchaser") participation in this Ground Package Program, Purchaser hereby agrees by acceptance of this Voucher and the services provided thereby, both on his/her behalf, and on behalf of any other person, including children, for whom this Voucher is signed by or on his behalf.

1. **Responsibility.** Purchaser acknowledges that NCL does not own or control any airlines, air carriers, motorcoaches, taxes, ground carriers, hotels, restaurants, tour operators, sightseeing tours, or other parties providing services pursuant to this Voucher. Purchaser acknowledges and agrees that each such provider of services is an independent contractor who is not and shall not be deemed an agent of NCL and that NCL makes no warranty regarding such provider of services.

   Purchaser further acknowledges and agrees that NCL shall not be liable or responsible for any loss, damage or injury arising out of any acts or omissions of any air carrier, hotel, motorcoaches, taxis, ground carrier, restaurant, tour operator or any other provider of services, and shall not be responsible for any damage or inconvenience caused by late air, car or motorcoach arrivals, nor for any loss or damage to baggage or other property of the Purchaser. In arranging for the transportation of passengers, excursions, accommodations, board or any other activities or services provided hereunder, NCL does so only as a convenience to the Purchaser and Purchaser hereby agrees that NCL shall not be liable or responsible in any respect for any property damage or personal injury, including death, arising out of or in connection with any transportation, accommodation, excursion, hotel or activity provided in connection with this Voucher.

   All personal property and personal effects shall be at "owners risk" at all times Purchasers are cautioned against the risk of leaving personal articles in their hotel rooms or conveyances. NCL does not assume any responsibility or liability whatsoever for any items or personal effects lost or damaged during any activity.

   NCL shall receive the benefit of all disclaimers and limitations of liability applicable to or issued by airlines, air carries, motorcoaches, taxis, ground carriers, hotels, restaurants, tour operators or any other parties providing services pursuant to this Voucher.

2. **Price.** Prices for this Ground Package Program do not include food, beverages or other fees and taxes not specified herein or in documents provided to Purchaser. Prices quoted are in U.S. Dollars and are those in effect at the time of printing. Prices are subject to change without notice.

3. **Cancellations.** In the event of strikes, lockouts, civil disturbances, weather or any other reason beyond its control, NCL may, at its sole discretion, cancel any services provided hereunder and may, but is not obligated to, offer substitute hotels or services and shall not be liable for any loss whatsoever to Purchaser by reason of such cancellation or substitution.

4. **Severability.** Should any provisions of these terms and conditions of this Voucher Contract be contrary to or invalid by virtue of the law of any jurisdiction, the remaining provisions herein shall remain in full force and effect.

5. **Enforceability.** Purchaser acknowledges and agrees that the terms and contained herein are contractual and binding and not a mere recital and by acceptance of this Voucher Purchaser agrees to its terms.

6. **Entire Agreement.** The terms and conditions contained herein and in the contract of passage between NCL and the Purchaser for Purchaser's cruise aboard NCL's ship shall be the entire agreement between NCL and Purchaser and shall supersede all representations or conditions contained in NCL's advertisements, notices, brochures, or other literature and all promises and agreements made or claimed to have been made with Purchaser or any party representing Purchaser.

7. **Venue.** It is hereby agreed that any and all claims, disputes or controversies whatsoever arising from or in connection with this Voucher or the Ground Package Program, shall be commenced, filed and litigated, if at all, before a court of proper jurisdiction located in Dade County, Florida and the terms and conditions contained herein shall be interpreted under the laws of the State of Florida.

FROM :                              FAX NO. :7328641590          Sep. 06 2005 12:58PM  P2

# NCL NORWEGIAN CRUISE LINE

7665 Corporate center Drive
Miami, FLorida 33126

**Passenger Ticket Contract**
Cruise Ticket

**NORWEGIAN DAWN**   **SAILING:** Aug .14, 2005   **RESERVATION:** *12297207*

YOUR CRUISE-MAIL ADDRESS:   bwalsh5650@dawn.cruisemail.net

CABIN: **5650**

TICKET DATE:   7/12/2005

EMBARKATION/DEST:   NYC/NYC

AFT

ADULTS:   2       CHILD:   2

DINING:   FREESTYLE

|  | INS | TYPE | CLIENT ID |
|---|---|---|---|
| WALSH,BARBARA | US | N | NP |
| WALSH,JOHN | US | N | NP |
| WALSH,BROOKE | US | N | CH |
| WALSH,ERIC | US | N | CH |

GOV'T TAXES AND FEES:
USD   363.92

FARES AS AGREED

CRUISE TICKET CENTER
1700 ELLER DR

OWNER/MANAGER

PORT EVERGLADES FL 33316
06/01 Ship's Registry:   Bahamas

954-763-6828
To be presented for passage

**IMPORTANT NOTICE**
The passenger's attention is specifically directed to the terms and conditions of this contract set forth below. These terms and conditions affect important legal rights and the passenger is advised to read them carefully.

---

# NCL NORWEGIAN CRUISE LINE

7665 Corporate center Drive
Miami, FLorida 33126

**Passenger Ticket Contract**
Passenger Copy

**NORWEGIAN DAWN**   **SAILING:** Aug .14, 2005   **RESERVATION:** *12297207*
YOUR CRUISE-MAIL ADDRESS:   bwalsh5650@dawn.cruisemail.net

CABIN: **5650**

TICKET DATE:   7/12/2005

EMBARKATION/DEST:   NYC/NYC

AFT

ADULTS:   2       CHILD:   2

DINING:   FREESTYLE

|  | INS | TYPE | CLIENT ID |
|---|---|---|---|
| WALSH,BARBARA | US | N | NP |
| WALSH,JOHN | US | N | NP |
| WALSH,BROOKE | US | N | CH |
| WALSH,ERIC | US | N | CH |

GOV'T TAXES AND FEE
USD   363.92

FARES AS AGREED

CRUISE TICKET CENTER
1700 ELLER DR

OWNER/MANAGER

PORT EVERGLADES FL 33316
06/01 Ship's Registry:   Bahamas

954-763-6828
Not Good for passage

**IMPORTANT NOTICE**
The passenger's attention is specifically directed to the terms and conditions of this contract set forth below. These terms and conditions affect important legal rights and the passenger is advised to read them carefully.

IF YOU ARE A MEMBER OF OUR PAST GUEST CLUB, LATITUDES, AND THIS TICKET INDICATES YOU ARE A
TYPE - "NP", PLEASE CALL NCL AT 1-800-343-0098 BEFORE SAILING TO UPDATE YOUR LATITUDES STATUS.

14. Passenger will not be liable to pay nor entitled to receive any general average contribution in respect to property taken with them on the vessel.

15. Should any provision of this Contract be deemed invalid for any reason, said provision is deemed to be severed from this Contract and shall be of no effect, but all remaining provisions herein shall remain in full force and effect.

16. The passenger shall be liable to and shall reimburse Carrier for all damages to the vessel and its furnishings and any equipment or property of the Carrier caused directly or indirectly, in whole or in part, by any act or omission of the passenger, whether wilful or negligent. The passenger shall further indemnify the Carrier and each and all of their agents or servants against all liability whatsoever arising from any personal injury, death or damage or loss whatsoever caused directly or indirectly, in whole or in part, by any wilful or negligent act or omission on the part of the passenger.

17. The passenger agrees that any travel agent utilized by passenger in connection with the purchase of the cruise or issuance of this Contract, or for any related or incidental air or ground transportation or excursions, is solely passenger's agent and passenger shall remain liable to Carrier for the full applicable cruise fare. Carrier shall not be responsible for any representations, insolvency or other conduct of a travel agent, including but not limited to such agent's failure to remit any portion of the cruise fare to Carrier, or to remit any refund to the passenger. Passenger agrees that receipt of any refunds or notices by passenger's travel agent, including this Contract, shall constitute receipt by passenger.

18. Carrier reserves the right to increase fares without prior notice. In such event passenger has the option to accept and pay such increase, or to cancel passenger's reservation without penalty.

19. Carrier shall not be liable for any injuries or damages which occur while participating in athletic or recreational activities aboard the vessel or onshore at any port of call, including, but not limited to, passenger participation in snorkeling programs or passenger usage of any paddle ball, gymnasium, jogging, swimming, diving, health club and sauna facilities. By utilizing said facilities, passenger agrees to assume all risks arising therefrom and does hereby fully release and discharge Carrier from any and all claims, demands, damages, causes of action, present or future, whether the same be known, anticipated or unanticipated, resulting from or arising out of passenger's use or intended use of said facilities.

20. Passenger acknowledges that medical care while on a cruise ship may be limited or delayed and the ship may travel to destinations where medical care is unavailable. Therefore, every passenger warrants that he and those for whom he is responsible for are fit to travel. Any condition of the passenger that may require special attention or treatment of any kind must be reported to Carrier when reservation is requested. A medical certificate certifying fitness for travel may be required of any passenger at Carrier's request. Carrier reserves the right to refuse passage to women in advanced stages (third trimester) of pregnancy. Passengers with special needs are advised that certain international safety requirements and U.S. Coast Guard Regulations may cause difficulty for mobility-impaired persons or persons with severely impaired sight and/or hearing. Passengers requiring the use of a wheelchair must provide their own juniorsized standard size wheelchair (22 1/2 inches wide), as any wheelchairs available on the vessel are for emergency use only. Carrier reserves the right to refuse or revoke passage to anyone who fails to notify Carrier of any physical or emotional condition which may require special assistance or accommodation, or who is, in the sole judgment of Carrier, as a result of such condition unfit for travel, or who may require care, treatment or attention beyond that which Carrier can provide. In such circumstances Carrier shall have no liability to the passenger whatsoever. Passengers may not be able to participate in certain activities or programs either aboard the vessel or onshore at ports of call if to do so would create a risk of harm to any passenger.

21. Cancellation fees for cruise, air, land and other charges apply to all passengers on the reservation. Cancellation fees for air, land and other add-on charges will apply even if the reservation is not cancelled in full. Gateway changes for air and name changes for cruise, air, land and other add-ons are considered cancellations of those items. Cancellations must be telephoned to our Reservations Department. Depending on when the cruise is cancelled, cancellation charges will be assessed per the Terms and Conditions of the cruise brochure. Cancellation charges are subject to change without notice. Air tickets issued by our Air/Sea Department for passengers on our Air/Sea Programs are refundable only to Carrier. Group passenger policies may differ and payment and cancellation charges may differ by promotion. Refer to your travel agent, group booking agreement or promotion for specific terms and conditions.

22. Except as otherwise specified herein, this contract shall be governed in all respects by the General Maritime Law of the United States and, only when not inconsistent with the provisions of this Contract or U.S. maritime law, the laws of the State of Florida. It is hereby agreed that any and all claims, disputes or controversies whatsoever arising from, related to, or in connection with this Contract or the transportation furnished hereunder shall be commenced, filed and litigated, if at all, before the United States District Court for the Southern District of Florida in Miami, or as to those lawsuits to which the Federal Courts of the United States lack subject matter jurisdiction, before a court located in Miami-Dade County, Florida. U.S.A., to the exclusion of the Courts of any other country, state, city or county.

23. Passenger consents to Carrier's use and display of Passenger's likeness in any video, photograph or other depiction for any purpose, commercial or otherwise, without compensation or liability of any kind.

---

Passengers are advised to read the terms and conditions of the Contract set forth below. Acceptance of this Contract by Passenger shall constitute the agreement of Passenger to these Terms and Conditions.

## Terms and Conditions
## Norwegian Cruise Line Land Packages

Norwegian Cruise Line granting Purchaser of this Land Package Voucher ("Purchaser") participation in this Ground Package Program, Purchaser hereby agrees by acceptance of this Voucher and the services provided thereby, both on his/her behalf, and on behalf of any other person, including children, for whom this Voucher is signed by or on his behalf.

1. **Responsibility.** Purchaser acknowledges that NCL does not own or control any airlines, air carriers, motorcoaches, taxes, ground carriers, hotels, restaurants, tour operators, sightseeing tours, or other parties providing services pursuant to this Voucher. Purchaser acknowledges and agrees that each such provider of services is an independent contractor who is not and shall not be deemed an agent of NCL and that NCL makes no warranty regarding such provider of services.

   Purchaser further acknowledges and agrees that NCL shall not be liable or responsible for any loss, damage or injury arising out of any acts or omissions of any air carrier, hotel, motorcoaches, taxis, ground carrier, restaurant, tour operator or any other provider of services, and shall not be responsible for any damage or inconvenience caused by late air, car or motorcoach arrivals, nor for any loss or damage to baggage or other property of the Purchaser. In arranging for the transportation of passengers, excursions, accommodations, board or any other activities or services provided hereunder, NCL does so only as a convenience to the Purchaser and Purchaser hereby agrees that NCL shall not be liable or responsible in any respect for any property damage or personal injury, including death, arising out of or in connection with any transportation, accommodation, excursion, hotel or activity provided in connection with this Voucher.

   All personal property and personal effects shall be at "owners risk" at all times Purchasers are cautioned against the risk of leaving personal articles in their hotel rooms or conveyances. NCL does not assume any responsibility or liability whatsoever for any items or personal effects lost or damaged during any activity.

   NCL shall receive the benefit of all disclaimers and limitations of liability applicable to or issued by airlines, air carries, motorcoaches, taxis, ground carriers, hotels, restaurants, tour operators or any other parties providing services pursuant to this Voucher.

2. **Price.** Prices for this Ground Package Program do not include food, beverages or other fees and taxes not specified herein or in documents provided to Purchaser. Prices quoted are in U.S. Dollars and are those in effect at the time of printing. Prices are subject to change without notice.

3. **Cancellations.** In the event of strikes, lockouts, civil disturbances, weather or any other reason beyond its control, NCL may, at its sole discretion, cancel any services provided hereunder and may, but is not obligated to, offer substitute hotels or services and shall not be liable for any loss whatsoever to Purchaser by reason of such cancellation or substitution.

4. **Severability.** Should any provisions of these terms and conditions of this Voucher Contract be contrary to or invalid by virtue of the law of any jurisdiction, the remaining provisions herein shall remain in full force and effect.

5. **Enforceability.** Purchaser acknowledges and agrees that the terms and contained herein are contractual and binding and not a mere recital and by acceptance of this Voucher Purchaser agrees to its terms.

6. **Entire Agreement.** The terms and conditions contained herein and in the contract of passage between NCL and the Purchaser for Purchaser's cruise aboard NCL's ship shall be the entire agreement between NCL and Purchaser and shall supersede all representations or conditions contained in NCL's advertisements, notices, brochures, or other literature and all promises and agreements made or claimed to have been made with Purchaser or any party representing Purchaser.

7. **Venue.** It is hereby agreed that any and all claims, disputes or controversies whatsoever arising from or in connection with this Voucher or the Ground Package Program, shall be commenced, filed and litigated, if at all, before a court of proper jurisdiction located in Dade County, Florida and the terms and conditions contained herein shall be interpreted under the laws of the State of Florida.

FROM :                                          FAX NO. :7328641590                Sep. 06 2005 01:01PM  P4

**IMPORTANT NOTICE: PASSENGERS ARE ADVISED TO CAREFULLY READ THE TERMS AND CONDITIONS OF THE PASSENGER TICKET CONTRACT SET FORTH BELOW WHICH AFFECT YOUR LEGAL RIGHTS AND ARE BINDING. ACCEPTANCE OR USE OF THIS CONTRACT SHALL CONSTITUTE THE AGREEMENT OF PASSENGER TO THESE TERMS AND CONDITIONS.**

## Passenger Ticket Contract

1. For the purpose of this Contract the term "Carrier" shall include NCL (Bahamas) Ltd. d/b/a NCL and/or NCL America, its designees, assigns, successors or affiliates, the named vessel, any substituted vessel, and its or their tenders, launches and related facilities. The rights, defenses, immunities and limitations of liability set forth herein shall inure to the benefit of the Carrier and all concessionaires, independent contractors or other service providers; any affiliated or related companies, parents, subsidiaries, successors, assigns or fictitiously named entities; all suppliers, shipbuilders, component part manufacturers; and its or their owners, operators, managers, charterers, agents, pilots, officers, crew, and employees. The term "Passenger" shall include any person purchasing, accepting or using this Contract, on behalf of themselves or others in their care, including any accompanying minors, and any of their heirs, relatives, successors, assigns or representatives, regardless whether signed by or on his behalf. The fare includes only the transportation as specified herein, full board, and ordinary ship's food, but does not include spirits, wines, beer, sodas or mineral waters, nor charges for other incidental or personal services. The fare does not include government taxes and/or fees which may include, but are not limited to, any and all fees, charges and taxes imposed by U.S. and/or foreign governmental or quasi-governmental authorities including U.S. Customs fees, head taxes, inspection fees, air taxes incurred as part of a land tour, immigration and naturalization fees, harbor maintenance fees and Internal Revenue Service fees. This Contract shall be the entire agreement between the parties and supersedes all representations or conditions contained in Carrier's advertisements, notices, brochures or other literature and all promises and agreements made or claimed to have been made by anyone in connection with the cruise to the passenger or anyone representing him.

2. This ticket and Contract is valid only for the voyage specified on the preceding pages and for the person(s) named and cannot be transferred without Carrier's written consent. The fare paid shall be considered fully earned at the time of payment, or if not previously paid, then at the time payment is due or upon embarkation, whichever is sooner. Carrier shall not be liable to make any refund to passenger in respect of lost tickets or in respect of tickets wholly or partly not used by a passenger except as expressly set forth herein, any statute or other governmental regulation to the contrary notwithstanding.

3. Each passenger agrees to abide by all rules of the Carrier and its officers at all times and failure to do so may subject the passenger to disembarkation without any liability on the part of the Carrier for a refund or any other related expenses or losses to the passenger or any accompanying passenger whatsoever. A passenger under 21 years of age must be accompanied in the same or connecting stateroom by a passenger 21 years or older who expressly agrees to be responsible for the under 21 passenger throughout the cruise. This responsibility includes, but is not limited to, preventing the purchase or consumption of alcohol and preventing the violation of any ship rules. If the accompanying adult is not a spouse, parent or legal guardian, a notarized parental/guardian consent letter that authorizes the minor's travel and further authorizes medical treatment in case of an emergency, or certified copy of the marriage certificate, must be delivered to an NCL representative at the pier. Failure to produce such documentation at embarkation may result in boarding being denied with no refund provided. Passengers must be 21 years or older to purchase or consume alcohol or to engage in any form of gambling on the vessel.

4. Passenger is not allowed to bring on board the vessel without the previous written permission of the Carrier any intoxicating liquors or beverages, firearms, weapons of any kind, ammunition, explosive substances or any goods of a dangerous nature, nor animals of any kind, except service or guide animals, provided the passenger notifies Carrier prior to the cruise of his intention to bring such animal and agrees to accept sole responsibility for any expense, damage, injuries or losses associated with or caused by such animal.

5. Unless Passenger obtains prior written permission from Carrier, Passenger shall not solicit other passengers, Carrier's employees, personnel or agents during the voyage with respect to any professional, business, or commercial activity, for profit or otherwise. Failure to adhere to this prohibition may result in ejection from the vessel without liability of the Carrier to refund any portion of the fare or for any incidental costs whatsoever.

6. Carrier's responsibility shall never exceed the limitation of liability to which Carrier is entitled under applicable law. No undertaking, guaranty or warranty is given or shall be implied as to the seaworthiness, fitness, or condition of the vessel or any food, drink, medicine, or provisions supplied on board the vessel. In no event shall Carrier be liable for any incident arising outside the passenger areas of the vessel or the vessel itself, including, but not limited to those occurring ashore, on tenders not owned by the vessel, on or resulting from equipment not a part of the vessel, or upon docks or piers.

7. The passenger admits a full understanding of the nature and character of the vessel and assumes all risks of travel, transportation and handling of passengers and baggage. The passenger assumes the risk of and releases Carrier from liability for any injury, loss or damage whatsoever arising from, caused by or in the judgment of the Carrier or Master rendered necessary or advisable by reason of: any act of God or public enemies; force majeure; arrest, restraints of governments or their departments or under color of law; rulers or people; piracy; war; revolution; extortion; terrorist actions or threats; hijacking; bombing; threatened or actual rebellion, insurrection, or civil strife; fire, explosion, collision, stranding or grounding; weather conditions; docking or anchoring difficulty; congestion; perils of the sea, rivers, canals, locks or other waters; perils of navigation of any kind; lack of water or passageway in canals; theft; accident to or from machinery, boilers, or latent defects (even though existing at embarkation or commencement of voyages); barratry; desertion or revolt of crew; sojourn or ship by legal process; strike, lockout or labor disturbance (regardless whether such strike, lockout or labor disturbance results from a dispute between the Carrier and its employees or any other parties); or from losses of any kind beyond the Carrier's control. Under any such circumstances the cruise may be altered, shortened, lengthened, or cancelled in whole or part without liability to the Carrier for a refund or otherwise.

Except as otherwise specified above, if the vessel does not sail on or about the scheduled or advertised date for any reason whatsoever, including fault of Carrier, Carrier shall have liberty to substitute any other vessel or means of transportation, regardless whether owned or operated by Carrier, and to re-berth passengers thereon or, at Carrier's option, to refund the passage money paid of a pro rata portion thereof without any further liability for damages or losses of any kind whatsoever.

Carrier, in its sole discretion, shall have full liberty to proceed without pilots and tow and to assist vessels in all situations; to deviate from the direct or customary course for any purpose, including, without limitation, in the interest of passengers or of the vessel, or to save life or property; to put in at any unscheduled or unadvertised port; to cancel any scheduled call at any port for any reason and at any time before, during or after sailing of the vessel; to omit, advance or delay landing at any scheduled or advertised port; to put back to port of embarkation or to any port previously visited if Carrier shall deem prudent; to substitute another vessel or ports of call without prior notice and without incurring any liability to the passengers on account thereof for any loss, damage or delay whatsoever, whether consequential or otherwise.

Carrier shall have the absolute right, without liability for compensation to the passenger of any kind, to comply with governmental orders, recommendations or directions, including but not limited to those pertaining to health, security, immigration, customs or safety. In the case of quarantine, each passenger must bear all risks, losses and expenses caused thereby and will be charged for maintenance, payable day-by-day, if maintained on board the vessel for such period of quarantine. Passenger assumes all risks and losses occasioned by delay or detention howsoever arising. Costs connected with embarkation or debarkation of passengers and/or baggage and costs of transfer between vessel and shore as a result of the circumstances enumerated in this paragraph must be borne by the passenger.

8. (a) Whenever the term "baggage" is used herein, it shall mean only suitcases, valises, satchels, bags, hangers or bundles and their contents consisting of such personal wearing apparel, articles of personal adornment, toilet articles and similar personal effects as are necessary and appropriate for the purposes of the cruise, including all other personal property of the passenger not in a container. No tools of trade, household goods, computers, musical instruments, radios, televisions, electronic equipment, liquors, trade items, bullion, jewelry, precious stones, money, documents, or other valuables of any description or such articles as are specified in 46 U.S. Code, Paragraph 181 shall be brought upon the vessel by passenger or contained in passenger's baggage, except under and subject to the terms of a special written contract entered into with the Carrier before embarkation upon application of the passenger. The passenger hereby warrants that no such articles have been carried on the vessel or are contained in any receptacle or container presented to the Carrier as baggage. Carrier shall not be liable for any loss of or damage to any of the above listed items, or perishable items, dentures, optical devices (including contact lenses), medications, cameras, recreational and/or sporting equipment, cash, securities or other negotiable instruments under any circumstances whatsoever, whether carried within the passenger's baggage or otherwise.

(b) It is stipulated that the aggregate value of all the passenger's baggage and any other property under this ticket does not exceed $100.00 and any liability of the Carrier or the vessel for any cause whatsoever with respect to said baggage shall not exceed such sum unless the passenger shall in writing specify its true value and pay to the Carrier before embarkation 5% of the excess of such value, in which case the Carrier's liability, if any, shall be limited to the actual damage sustained up to, but not exceeding such specified value.

(c) All disclaimers and limitations of liability contained herein shall apply to all valuables stored or accepted for storage by Carrier, including valuables stored with the Carrier in safety deposit boxes or security envelopes. Carrier cannot accept responsibility for and in no event shall be liable for loss or damage of valuables or other articles left in cabins, and in no event shall Carrier be liable for loss or damage to property of any kind not shown by the passenger to have occurred while in the Carrier's actual custody, or for normal wear and tear.

(d) Loss of or damage to baggage occurring during loading or disembarking must be reported by the passenger to Carrier's personnel prior to debarking the U.S. Customs area. Carrier shall not be responsible for any such loss or damage which is not so reported. Liability, if any, for loss or damage to baggage occurring elsewhere than on board the vessel in connection with air, car, motor coach, ground transfers, porters, stevedores and/or hotels shall rest solely with the person or entity providing such services and passenger agrees that Carrier does not guarantee the performance of such services and shall not be liable in any respect or capacity for any such loss or damage. Carrier has an absolute right to transfer passenger and/or his baggage to other carriers, whether by water, rail or air, to or toward the ultimate destination. In the event such substituted passage is for the convenience of the Carrier, it shall be at Carrier's cost. Otherwise, it shall be at the cost of passenger.

9. In making any arrangements for the transportation of any passenger or his or her baggage by any other carrier, connecting carrier or otherwise; or for shore accommodations, excursions, victualing, amusement or entertainment for any passenger; or for any other service or facility whatsoever for any passenger; or if the vessel carries a surgeon, physician, barber, hairdresser, manicurist, or any individual or entity providing personal services; or if the vessel requests emergency medical transportation or emergency medical care for the passenger on his behalf; it is understood and agreed that Carrier does so solely for the convenience of the passenger, does not act on behalf of or supervise the parties or persons who own, furnish or operate such services or facilities, and that the same are provided by independent contractors who work directly for the passenger and are subject to such terms, if any, appearing in the tickets, vouchers or notices of such party or parties. Such parties or persons, in dealing with the passenger, are not and shall not be considered in any respect whatsoever as employees, servants or agents of the Carrier. Each such person, party or entity shall be entitled to make a proper charge for any service performed for or on behalf of the passenger and the cost of such service, including, but not limited to physicians, surgeons, hospitals, medications, diagnostic facilities, air ambulance evacuation or ground ambulance, shall be the sole responsibility of the passenger. Passenger hereby agrees to reimburse and indemnify Carrier for any funds advanced on account of any such charges. Carrier assumes no responsibility nor guarantees the performance of any such person, party, contractor, service or facility, or those under their orders or assisting them with respect to any diagnosis, medication, treatment, advice, services or care of any kind given to any passenger. Carrier shall not be liable for the act, neglect, default or omission of any party in respect to any events, matters or things other than as set forth herein.

10. No suit, including without limitation suits brought in rem and in personam, shall be maintained against the Carrier for emotional or physical injury, illness or death of passenger unless written notice of the claim with full particulars be delivered to the Carrier within six (6) months from the day when such injury, illness or death occurred; and in no event shall any suit be maintainable unless commenced within one (1) year from the day when the injury, illness or death occurred, notwithstanding any provision of law of any state or country to the contrary. No suit involving any other manner of claim, legal theory, or cause of action whatsoever arising from, connected with or related to this Contract or the cruise, including but not limited to claims for loss or damage to baggage, or for delay, detention or otherwise, shall be maintainable against the Carrier, either in personam or in rem, unless written notice of the claim with full particulars is delivered to the Carrier within thirty (30) days of termination of the passenger's scheduled cruise and suit is commenced within six (6) months from the day when the cause of action arose, notwithstanding any provision of law of any state or country to the contrary. Passenger agrees that any claim or cause of action brought forth against Carrier shall be litigated solely in a personal capacity and not as member of a class action or in any other representative capacity.

11. Carrier reserves the right, without incurring liability of any kind, to refuse or revoke passage to, or confine to a stateroom, any passenger who in Carrier's sole judgment may be refused admission into a port of landing or into the country of destination, or may be suffering from a contagious disease, or for any other cause may endanger themselves or others, or become obnoxious to others. Any passenger who is refused passage or otherwise denied any advertised benefit or service under this paragraph shall not be entitled to receive any compensation whatsoever and shall become liable for any resulting expenses incurred by the Carrier.

12. Carrier disclaims all liability to Passenger for damages for emotional distress, mental suffering or psychological injury of any kind not resulting from a physical injury to that passenger, nor from that passenger having been at risk of actual physical injury, nor intentionally inflicted by the Carrier. On cruises that neither embark, disembark nor call at any U.S. port, Carrier shall be entitled to any and all limitations and immunities provided under the Athens Convention Relating to the Carriage of Passengers and Their Luggage by Sea of 1974, as amended by the Protocol to the Convention Relating to the Carriage of Passengers and their Luggage by Sea of 1976, which limits Carrier's liability for death or personal injury of a passenger to no more than 46,666 Special Drawing Rights as defined therein (approximately $67,000 U.S. which fluctuates depending on daily exchange rate printed in the Wall Street Journal). In addition, and on all other cruises, Carrier and the vessel shall have the benefit of any statutory limitation of liability or exoneration of liability available in the applicable forum, or under any applicable national or international law, including but not limited to Title 46 of the United States Code, Sections 181 through 186.

13. Upon embarkation, the Passenger shall have in his possession and assumes all responsibility for obtaining all visas, passports, certified birth certificates, travel and health documents required by any governmental authority, and if he fails to do so Carrier shall have no further obligation to transport or to furnish transportation to the passenger. Passengers are advised to consult their travel agent or the appropriate governmental authority concerning required documentation for travel. Passenger shall indemnify Carrier for all penalties, fines, charges, losses and expenses imposed upon or incurred by Carrier due to passenger's failure to have proper documentation or otherwise comply with applicable laws or regulations of any kind, or imposed by governmental authorities. Any stamps on tickets, customs, excise or other taxes or fines on passenger or Carrier resulting from passenger's conduct, embarkation expenses, and all expenses of such a nature are to be paid by passenger. Carrier shall not be liable to refund passenger's fare or for any other damages or expenses if passenger is prohibited from boarding due to lack of proper documents.

JS 44 (Rev. 11/05)

# CIVIL COVER SHEET

06-21...

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS
BABARA WALSH

**DEFENDANTS**
NCL (BAHAMAS) LTD. A Bermuda Company d/b/a NCL and/or NCL AMERICA

CIV - GOLD
MAGISTRATE
TURNOFF

(b) County of Residence of First Listed Plaintiff: Dade
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Marc David Sarnoff, Esq.
Sarnoff & Bayer
3000 Shipping Avenue, Miami, Fl. 33133

Attorneys (If Known)
DADE 06CW 21758 / Gold Turnoff

(d) Check County Where Action Arose: ☒ MIAMI-DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE ☐ HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☒ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 370 Other Fraud | ☐ 720 Labor/Mgmt. Relations | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability |  | ☐ 371 Truth in Lending | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise |  | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 385 Property Damage Product Liability | ☐ 790 Other Labor Litigation | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | **PRISONER PETITIONS** | ☐ 791 Empl. Ret. Inc Security Act | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | **SOCIAL SECURITY** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | Habeas Corpus: | ☐ 861 HIA (1395ff) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 530 General | ☐ 862 Black Lung (923) | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 863 DIWC/DIWW (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other | ☐ 864 SSID Title XVI | ☐ 950 Constitutionality of State Statutes |
|  | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | ☐ 865 RSI (405(g)) |  |
|  |  | ☐ 555 Prison Condition | **FEDERAL TAX SUITS** |  |
|  |  |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |  |
|  |  |  | ☐ 871 IRS—Third Party 26 USC 7609 |  |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).
(See instructions second page):
a) Re-filed Case ☐ YES ☐ NO
b) Related Cases ☐ YES ☐ NO
JUDGE _____ DOCKET NUMBER _____

## VII. CAUSE OF ACTION
Negligence Marine

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 75,000 +

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD
SARNOFF & BAYER

DATE 7/11/06

FOR OFFICE USE ONLY
AMOUNT 350   RECEIPT # 943474

3000 SHIPPING AVENUE, COCONUT GROVE, FLORIDA 33133 • TEL (305) 441-5966 • FAX (305) 441-59..

07/13/06